IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LM INSURANCE CORPORATION )
)
        Plaintiff, )
)
v. ) No. 04 C 618
)
SOURCEONE GROUP, INC., a/k/a and )
d/b/a SOURCE ONE GROUP, LLC, and )
PAYROLL SERVICES OF VIRGINIA; )
DALRADA FINANCIAL CORPORATION, a/k/a )
and d/b/a IMAGING TECHNOLOGIES )
CORPORATION; EXPERT HR, INC., and )
EXPERT HR-MICHIGAN, INC., )
)
        Defendants. )

## MEMORANDUM OPINION AND ORDER

On September 19, 2006, I denied defendant SourceOne Group, Inc.'s ("SOG") motion to stay this litigation pending the outcome of a related proceeding in the California courts, an action titled *LM Ins. Corp. v. Brian Bonar*, No. GIC 845635 (the "California proceeding"). On November 3, 2006, during a conference with the parties and after further inquiry concerning the California proceeding, I ordered the parties to provide additional briefing concerning whether this litigation should be stayed. After further consideration, I affirm my previous decision to deny SOG's motion.

I.

To briefly summarize,[1] the present litigation concerns a negotiation for workers' compensation insurance coverage between SOG and plaintiff LM Insurance Corporation ("LM"). LM contends that it issued two insurance policies to SOG: policy number WC5-34S35147-012 (the "First LM Policy"), and policy number WC5-34S-351417-022 (the "Second LM Policy"). At issue in the present litigation are events that transpired when SOG sought to add one of its clients to its insurance coverage with LM. On July 16, 2006, I issued an opinion granting in part and denying in part defendants' motions for summary judgment. In that opinion, I concluded that LM could proceed on (1) its breach of contract claim against SOG for SOG's failure to pay an agreed premium amount on the Second LM Policy; (2) its breach of contract claim against SOG for SOG's failure to comply with the audit provisions of both the First and Second LM Policies; (3) its negligent misrepresentation/omission claims that SOG misrepresented that it had a co-employment relationship with the client in question; (4) and its claim that SOG fraudulently induced LM to pay claims when it did not intend to perform its promised obligations in return.[2]

---

[1] The facts of this litigation are summarized in greater detail in this court's memorandum order and opinion of September 19, 2006, ruling on defendants' motions for summary judgment.

[2] In response to LM's motion to reconsider, on September 19, 2006, I also denied summary judgment for defendant Dalrada Financial Corporation a/k/a and d/b/a Imaging Technologies

2

Brian Bonar ("Bonar"), the former CEO of SOG, was an initial party to this litigation. However, on August 18, 2004, I granted his motion to dismiss him from this litigation for lack of personal jurisdiction. LM subsequently brought a claim against Bonar in California state court; this claim is the California proceeding that SOG contends now necessitates a stay of this litigation. LM's complaint in the California proceeding brought claims against Bonar for (1) breach of contract for failing to make good on his personal guaranty of premium payments by SOG to LM;[3] (2) promissory estoppel based on the same personal guarantee; false promise on the same personal guarantee; (3) intentional misrepresentation for Bonar's representations concerning the disclosure of the insurance needs of the client and the collection of money for insurance coverage by SOG from the client; (4) negligent misrepresentation for the same representations; and (5) failure to disclose for Bonar's failure to inform LM of changes in the exposure on SOG's policy caused by the addition of the client. On June 1, 2006, the trial court in the

---

Corporation's ("Dalrada/ITEC") on LM's alter-ego claim against it; this claim is dependent on the success of LM's claims against SOG.

[3]As is discussed in more detail in this court's opinion on defendants' motions for summary judgment, at issue in this litigation is a purported agreement between LM and SOG that, in exchange for LM adding SOG's client to SOG's workers compensation insurance policy with LM, SOG agreed to make additional premium payments to LM. LM contends that SOG agreed to a certain schedule for these premium payments, including an initial downpayment and additional payments thereafter. LM further contends that Bonar himself provided a personal guaranty for the amount of the premium payments.

California proceeding issued a judgment finding for Bonar on all of LM's claims. That judgment incorporated the court's minute order of May 2, 2006 (the "minute order") and stated that the minute order constituted the court's "statement of decision" on the matter. In the minute order the court provided, in relevant part:

> The evidence supports that there was a meeting of the minds as to [the First LM Policy] as to a personal guaranty by defendant Bonar for a total of $829,342 50
>
> LM however cancelled [the First LM Policy] and reissued and paid claims on a new policy [the Second LM Policy] which contained a loss sensitivity feature no longer available under [the First LM Policy]. There was no meeting of the minds as to [the Second LM Policy] and there was no contractual obligation on Bonar's part to honor his personal guaranty on [the Second LM Policy].
>
> There is no evidence to support reasonable reliance such as to enforce any of the remaining causes of action

LM subsequently appealed this judgment to the California court of appeals, and that appeal is now pending.

II.

SOG argues that principles of collateral estoppel dictate that I stay the matter now before me. Because the case that SOG contends necessitates a stay is a California state case, under the full faith and credit statute I must determine whether, under California law, that case has preclusive effective over this one. *See, e.g., Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) (citing 28 U.S.C. § 1738); *E.B. Harper & Co., Inc.*

4

*v. Nortek, Inc.*, 104 F.3d 913, 921 (7th Cir. 1997) (internal citations omitted). Under California law, the doctrine of collateral estoppel "precludes relitigation of issues argued and decided in prior proceedings." *Pac. Lumber Co. v. State Water Res. Control Bd.*, 126 P.3d 1040, 1054 (Cal. 2006) (citing *Lucido v. Superior Ct.*, 795 P.2d 1223, 1225 (Cal. 1990)). Under California law, the doctrine only applies if (1) the issue sought to be precluded from relitigation is identical to that decided in the former proceeding; (2) the issue to be precluded was actually litigated in the former proceeding; (3) the issue to be precluded was necessarily decided in the former proceeding; (4) the decision in the former proceeding must be final and on the merits; and (5) the party against whom preclusion is sought is the same as, or in privity with, the party to the former proceeding. *Id.* As the party asserting collateral estoppel, SOG bears the burden of establishing these requirements. *See id.* The parties do not dispute the fifth issue, since LM is a party to both proceedings. I therefore need only decide whether the other four requirements are met. In addition to identifying these issues, it is also useful to clarify what evidence I may consider in determining the scope and effect of the decision in the California proceeding. California courts have held that a court determining the preclusive effect of a prior proceeding may consider "the judgment, the record of the entire proceedings, and extrinsic evidence." *See, e.g.,*

*Casad v. Qualls*, 19 Cal. Rptr. 243, 246 (Cal. App. Ct. 1977) (collecting cases).

Before addressing whether these requirements are met, however, it is also useful to clarify which issues the parties contend may not be relitigated here under the principles of collateral estoppel. In my previous order denying, in part, defendants' motions for summary judgment, I determined that LM could still proceed on its breach of contract, negligent misrepresentation and omission, and fraudulent inducement claims. In my previous order initially denying SOG's motion for a stay, I stated that the factual disputes in this litigation relevant to these remaining claims include whether (1) by its silence SOG agreed to plaintiff's offer to provide coverage for AF2, (2) SOG breached its contract with plaintiff by not complying with plaintiff's audit requests, (3) plaintiff relied on SOG's purported misrepresentations, (4) plaintiff was fraudulently induced to pay on AF2's claims, and (5) there was a co-employment relationship between AF2 and SOG. The parties do not dispute that, based on my summary judgment ruling, these factual disputes remain in this litigation, although they dispute whether principles of collateral estoppel bar LM from litigating these issues.

III. Issues Identical to Issues Decided in Former Proceeding

The first question I must resolve, then, is whether the above-identified factual issues are identical to issues decided in the California proceeding. *See Pac. Lumber Co.*, 126 P.3d at 1054 (internal citation omitted). The California proceeding involved LM's claims against Bonar based on his involvement in the same negotiations and transactions at issue in this litigation. LM brought claims against Bonar for a breach of his personal guaranty of the amount SOG purportedly agreed to pay LM in exchange for insurance coverage for its client, intentional and negligent misrepresentation for Bonar's representations concerning the insurance needs of SOG's client and the collection of money for insurance coverage by SOG from the client; and failure to disclose for Bonar's failure to inform LM of changes in the exposure on SOG's policy with LM caused by the addition of the client.

The California court issued a judgment on these claims in Bonar's favor. In the record of its decision, the California court stated that there "was no meeting of the minds as to [the Second LM Policy] and there was no contractual obligation on Bonar's part to honor his personal guaranty on [the Second LM Policy]." With respect to the intentional and negligent misrepresentation and failure to disclose claims, the California court found that there was "no evidence to support reasonable reliance such as to enforce any of the remaining causes of action."

7

SOG contends that LM's breach of contract claims against Bonar encompass LM's breach of contract claims against SOG in this litigation because the California court determined that, since there was no valid contract for Bonar to guarantee, Bonar had no obligation to honor his personal guaranty. Put another way, SOG contends that the California court decided that there was no meeting of the minds between SOG and LM on the material terms of the Second LM Policy, so SOG and LM had no valid agreement that SOG would make premium payments in exchange for the issuance of that policy, and therefore Bonar had no obligation to honor his personal guaranty of those payments. It is clear that the parties, in their pleadings and filings with the California court and in their oral arguments before the court, did argue that the Second LM Policy was not a valid contract because LM and SOG never agreed on some material terms, including whether the Second LM Policy would have a loss sensitivity rating provision ("LSRP"). This same question is at issue in the case before me. Whether this issue was actually decided by the court is addressed below.

SOG also contends that whether SOG breached the audit provisions of the Second LM Policy was implicitly at issue in the California proceeding because the existence and enforceability of the Second LM Policy was at issue in the California proceeding. This issue is addressed more below, but what is clear is that whether SOG breached the audit provision of the First LM Policy was

not at issue in the California proceeding - SOG does not argue that it was and, as LM points out, this issue is still alive in the case now before me. It is true, as SOG contends, however, that if the California proceeding did determine that the Second LM Policy was not a valid contract, then the principles of collateral estoppel would bar LM from here asserting a breach of contract claim against SOG based on that policy.

SOG also argues that whether it misrepresented that it had a co-employment relationship with the client in question was at issue in the California proceeding because at issue in that litigation was whether Bonar had made misrepresentations to SOG. However, SOG has presented no evidence that this particular misrepresentation actually arose in the California proceeding. From the evidence presented it appears that the misrepresentations in the California proceeding concerned Bonar's failure to notify LM in a timely fashion of the existence of its client and its insurance needs. There is no evidence that the specifics of the co-employment relationship were at issue.[4]

Finally, SOG contends that the factual disputes concerning LM's fraudulent inducement claim were at issue in the California

---

[4]At issue in this litigation is whether the client was even eligible to be covered under the terms of SOG's insurance policies because of the lack of a co-employment relationship between SOG and the client. The insurance policies and LM's discussions with SOG purportedly required SOG to exercise a certain degree of control over the client's employees when LM contends it did not.

proceeding because that proceeding concerned Bonar's misrepresentations to LM that SOG would agree to the terms of LM's offer about the Second LM Policy. As I explained in my order denying summary judgment to SOG on LM's fraudulent inducement claim, there is a factual dispute here whether SOG orally represented to LM that it would agree to the terms of LM's offer when SOG had no intention of doing so. LM argues that this claim could rest on oral representations made not by Bonar but by another representative of SOG. SOG responds that there is no evidence that anyone but Bonar communicated with LM about these issues. However, there is evidence that David Stone ("Stone"), another representative of SOG, had telephone conversations with LM concerning the offer and might have made representations to LM upon which LM could base a fraudulent inducement claim.

Therefore, as discussed above, it is true that the California proceeding did involve the factual disputes of whether SOG agreed to LM's offer to provide insurance coverage, and whether the Second LM Policy was valid such that LM would have a breach of contract claim against SOG for SOG's purported failure to comply with its audit provisions. However, the other remaining factual disputes are outside the scope of the issues decided by the California proceeding.

IV. Issues Actually Decided in the Former Proceeding

I still must consider whether the issues concerning SOG's acceptance of LM's offer and the validity of the Second LM Policy were actually decided in the California proceeding. This is where a real question arises, because the California court's statement of decision is unclear, and LM and SOG argue for different interpretations of that decision. As noted above, the California court's decision provided, in relevant part:

> The evidence supports that there was a meeting of the minds as to [the First LM Policy] as to a personal guaranty by defendant Bonar for a total of $829,342 50
>
> LM however cancelled [the First LM Policy] and reissued and paid claims on a new policy [the Second LM Policy] which contained a loss sensitivity feature no longer available under [the First LM Policy]. There was no meeting of the minds as to [the Second LM Policy] and there was no contractual obligation on Bonar's part to honor his personal guaranty on [the Second LM Policy].

SOG contends that the California court decided that, because SOG and LM did not have a meeting of the minds about whether the Second LM Policy would contain a LSRP, the Second LM Policy was not a valid contract and so Bonar had no obligation to honor his personal guaranty. LM appears to contend, however, that this decision provides only that there was no meeting of the minds between LM and Bonar about what he was agreeing to guarantee.

I agree with LM on this point. First, the statement of decision is unclear. It is unclear what "meeting of the minds" the

11

California court determined did not exist: the meeting of the minds between Bonar and LM about his guarantee, or the meeting of the minds between LM and SOG about the terms of the Second LM Policy. California courts have held that, where a decision is unclear on its face, an interpretation should be adopted "that is consonant with the judgement that should have been rendered on the facts and law of the case." *See Casad*, 139 Cal. Reptr. at 248. Other California courts have determined that, where a decision is ambiguous on its face, it should not have preclusive effect. *See, e.g., Flynn v. Gorton*, 255 Cal. Rptr. 768, 771 (Cal. App. Ct. 1989).

Under either standard, collateral estoppel should not apply. From a review of the pleadings, the parties' arguments to the California court, the court's comments to the parties during oral arguments, and the statement of decision itself, the statement of decision is at best unclear, and the most logical interpretation is that the court decided that there was no meeting of the minds between Bonar and LM about his personal guaranty. It was Bonar's liability that was at issue, and the evidence from the court's comments is that the court focused its analysis on what Bonar believed he was guaranteeing. These sources show that the evidence the California court considered was a sequence of events in which Bonar sent a signed letter to LM proposing terms for SOG to make additional premium payments in order to endorse SOG's client onto

its insurance coverage with LM. Included in this signed letter was a provision that Bonar guaranteed the premium payments. LM's representative made changes to this document and sent it back to Bonar. Included in these changes was language that Bonar and SOG would jointly and severally guarantee the premium payments. Bonar never signed and returned the revised document, so it was perhaps unclear to what he had personally agreed.

The statement of decision references the fact that, after receiving the initial premium payment from SOG that was contemplated by Bonar's initial letter to LM, LM cancelled the First LM Policy and issued the Second LM Policy that contained a LSRP that was not in effect on the First LM Policy. This provision potentially changed the overall premium amounts due on the policy, and could have had the effect of costing SOG much more for the insurance overall than would have been covered by its proposed additional premium payments. One interpretation of the reference to the LSRP in the statement of the decision is the interpretation SOG urges, that the court found that, because SOG did not contemplate the application of the LSRP, it did not have a meeting of the minds with LM about the issuance of the Second LM Policy, so that SOG had no obligation to make additional premium payments and Bonar had no obligation to guarantee those payments. Another interpretation is the one that LM urges, that the court found that, because Bonar did not contemplate the inclusion of the LSRP, he had

13

no meeting of the minds with LM about the policy for which he was guaranteeing premium payments. LM's interpretation is the more logical, and more in keeping with the facts and law of the case.

V.

Because I find that none of the factual disputes remaining in this litigation were actually decided in the California proceeding, I need not determine whether the previous decision is a final decision, and need not further reconsider whether a stay is appropriate in this case. I therefore reaffirm my decision to deny SOG's motion for a stay.

ENTER ORDER:

_____
**Elaine E. Bucklo**
United States District Judge

Dated: January 11, 2007